■ In the Matter of ROSELLA CARE, Petitioner, v BRIAN J. WING et al., Respondents. [747 NYS2d 519]

At all pertinent times, the petitioner was a recipient of safety net assistance benefits from the Westchester County Department of Social Services (hereinafter DSS) in the total sum of $398 per month. Recipients of such public assistance are required to comply with job training or other work requirements (*see e.g.* Social Services Law § 331). It is uncontroverted, however, that for the three years preceding the instant determination, the petitioner was exempt from otherwise applicable work requirements because she was the caretaker of her "invalid mother" (Social Services Law § 332 [1] [c]).

Based upon an anonymous tip that the petitioner was working three days a week as a receptionist at a Larchmont hair salon, DSS commenced a fraud investigation which, inter alia, confirmed the petitioner's presence in the hair salon on Febru-

ary 24, 2000. When investigators entered the salon and confronted the petitioner, she misidentified herself and denied that she knew the petitioner. Subsequent investigation, however, revealed that it was indeed the petitioner who the investigators questioned at the salon.

At a meeting with DSS fraud investigators on March 8, 2000, the petitioner claimed that she was only present in the salon on that one occasion, and was working without compensation as a favor to a friend whose telephone number and address she could not recall. Ordinarily, the petitioner claimed, she was home caring for her mother. The petitioner's mother accompanied the petitioner to that meeting, reportedly behaved in a belligerent and disruptive manner, and appeared, to the investigators, to suffer from no infirmities.

Based upon the evidence that the petitioner was receiving unwarranted public assistance benefits, on or about August 8, 2000, DSS revoked her exemption from work requirements, and directed the petitioner to appear for a work assignment of 20 hours per week with the Salvation Army. The petitioner did not comply. When her caseworker arranged for a conciliation conference to resolve the matter, the petitioner refused to attend, asserting that DSS knew her objections and she had nothing to add. Consequently, DSS suspended the petitioner's benefits for a period of 90 days.

The petitioner then demanded a fair hearing before a Department of Labor (hereinafter DOL) hearing officer, which was conducted on October 12, 2000. The thrust of DSS's case was that the petitioner was not exempt from work requirements, and had refused to report to work with the Salvation Army. DSS asserted that it had offered to provide home health care for the petitioner's mother to enable the petitioner to participate in a work assignment, but that this offer was summarily rejected. Thus, DSS argued that the petitioner's unreasonable refusals justified suspension of her benefits. Notably, DSS offered no evidence to disprove the claimed disability of the petitioner's mother.

The petitioner offered uncontroverted medical evidence that in May, 2000, her mother had been seen by a physician who diagnosed her with "significant osteoarthritis in both shoulders which limits her daily activities." More significantly, the petitioner offered evidence that on June 12, 2000, her mother had been hit by a car, and sustained, inter alia, fractures of the pelvis and of an arm. She claimed that when she tried to explain matters to an unidentified DSS employee, that employee "got nasty with me, she didn't want to hear nothing."

In its decision upholding DSS's determination suspending the petitioner's benefits, the DOL found that the petitioner had not shown good cause for refusing to appear for her work assignment. Implicitly acknowledging the petitioner's mother's ongoing medical needs and disabilities which were found "not [to be] in issue," the DOL nevertheless determined that the petitioner had unjustifiably refused services of a home care aide, and accordingly, she had not shown good cause for failing to appear for her work assignment. There was no finding that the petitioner was guilty of any act of fraud.

The petitioner thus commenced this proceeding challenging the suspension of her safety net assistance benefits. Pursuant to the parties' stipulation continuing a temporary restraining order, the suspension of the petitioner's assistance has been stayed pending the determination of this proceeding.

In reviewing a determination of an administrative agency made after a hearing, this Court's review is limited to whether the factual determination is supported by substantial evidence (*see* CPLR 7803 [4]; *Matter of Williams v Nicoletti,* 295 AD2d 353; *Matter of Walls v Wing,* 292 AD2d 624; *Matter of Hanley v County of Putnam,* 277 AD2d 381). Here, the determination suspending the petitioner's benefits was not supported by substantial evidence and thus it must be annulled (*see Matter of Daniels v Johnson,* 293 AD2d 676; *Matter of Adania C. v Hammons,* 236 AD2d 315, 316).

Pursuant to Social Services Law § 332 (1) (c) and 12 NYCRR 1300.2 (b) (5), the petitioner was entitled to an exemption if her presence in the home was necessary due to the illness or incapacity of her mother and no other *member of the household* was available to provide care. Here, DSS determined, without any medical evidence, that the petitioner was not needed to care for her mother. To the extent the petitioner's mother needed home care, DSS offered to provide it. However, this is not an available option under the Social Services Law or the regulations. The law and regulations conferred a work exemption upon the *petitioner* to care for her mother if medically necessary. The law does not compel the petitioner's mother to accept home care from an outsider, nor does it permit DSS to revoke the petitioner's eligibility for the work exemption because of her mother's refusal to accept outside care (*see Matter of Martinez v Turner,* 289 AD2d 408; *Matter of Gallimore v Wingate,* 282 AD2d 675).

Moreover, whatever doubts DSS may have had as to the genuineness of the petitioner's mother's disability in March 2000, became largely irrelevant as of the time of the fair

hearing. The petitioner offered uncontroverted proof of significant disabling injuries to her mother as a result of her having been struck by a car in June 2000. These injuries were obviously very real, and the petitioner's continuing eligibility for a work exemption may not properly be evaluated without taking these new injuries into consideration.

It is quite apparent from the record that DSS strongly suspected that the petitioner was guilty of welfare fraud. However, DSS did not conduct an investigation resulting in fraud charges and neither the hearing examiner nor the DOL found that she committed fraud. The petitioner's benefits were suspended solely because she refused to obey a work assignment order (*see Matter of Defendorf v McGowan,* 280 AD2d 957; *Matter of Castro v Wing,* 270 AD2d 257; *Matter of Jones v New York City Dept. of Social Servs.,* 269 AD2d 397).

DSS unilaterally determined that the petitioner no longer deserved a work exemption. However, DSS attempted to utilize an expedient process that was legally improper. DSS was not authorized to suspend the petitioner's assistance as it did here by unilaterally revoking the petitioner's existing exemption, and by requiring that her mother consent to outside care as a condition of continued assistance. Accordingly, the determination of the DOL upholding DSS's suspension of assistance must be annulled (*see Matter of Leibner v New York State Dept. of Envtl. Conservation,* 291 AD2d 558, *lv denied* 98 NY2d 606; *Matter of Ledovsky v DeBuono,* 290 AD2d 447; *Matter of Siano v Blum,* 79 AD2d 501). Florio, J.P., S. Miller, Crane and Mastro, JJ., concur.