Matter of Leon v Wing (2003 NY Slip Op 23988)

Matter of Leon v Wing

2003 NY Slip Op 23988 [3 Misc 3d 578]

January 7, 2003

Supreme Court, New York County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, June 16, 2004

[*1]
In the Matter of Francisca Leon, Petitioner,
v
Brian Wing, as Commissioner of the New York State Office of Temporary and Disability Assistance, et al., Respondents.
Supreme Court, New York County, January 7, 2003

APPEARANCES OF COUNSEL

Legal Aid Society of New York, New York City (David W. Weschler and Palvi D. Mohammed of counsel), for petitioner. Eliot Spitzer, Attorney General, New York City (Deborah Ferleger of counsel), for Brian Wing, respondent. Michael A. Cardozo, Corporation Counsel, New York City (Richard J. O'Halloran and Jessika E. Hickey of counsel), for Verna Eggleston, as administrator of New York City Human Resources Administration, respondent.

{**3 Misc 3d at 579} OPINION OF THE COURT

Debra A. James, J.
Petitioner Francisca Leon resides in New York County with her five children and is a recipient of public assistance from the City including Family/Safety Net Assistance, food stamps and Medicaid. Petitioner's 16-year-old daughter held a summer job during the summer of 2001.
The City received a computer match report from the Wage Reporting System (WRS) operated by the New York State Department of Taxation and Finance (see, Social Services Law § 23) which set forth that petitioner's daughter had income during{**3 Misc 3d at 580} the third quarter of 2001 in the amount of $1,438. As a result of this report, the City sought to verify petitioner's family income and resources (see, 18 NYCRR 351.5 (a); 351.6). The City mailed to petitioner a computer-generated form entitled "Request for Information about Earned Income" dated December 7, 2001. The form listed the name of the petitioner's daughter, her employer, and the income from her summer job. The form's instructions in pertinent part were as follows:
"Dear Sir/Madam: We have received information from the New York State [*2]Department of Social Services that you or a member of your household has worked for the above employer. The regulations which allow us to ask for this information are: 18 N.Y.C.R.R. Sections 35.1 and 351.22 (D). Please read the information below, check and complete the item(s) which apply to you, date and sign your name. Return this letter to us in the enclosed self-addressed envelope with the necessary documents: . . . 
"Please return this letter and documents by 12/21/01. If you fail to respond, it may affect your continued receipt of Public Assistance, Medical Assistance and/or Food Stamp Benefits. You will receive a notice advising you of any changes in your benefits."
Petitioner did not respond to this notice within the indicated time frame. Thereafter the City sent petitioner a "Notice of Decision on Your Public Assistance, Food Stamps and Medical Assistance." That notice stated in pertinent part:
"This is to tell you that your public assistance will be discontinued. You will no longer get public assistance beginning January 19, 2002.
"This is because you failed to return the request for information about the employment earnings . . . identified in our State Wage Reporting System (a computerized matching system). This information was not returned as of December 28, 2001 as we requested in our letter to you."
Petitioner requested a fair hearing from respondent Office of Temporary and Disability Assistance (OTDA or the State) seeking to overturn the City's determination. On February 20, 2002, a hearing was held before the OTDA's Administrative Law Judge (ALJ). On March 11, 2002, the ALJ issued a decision after fair hearing upholding the City's discontinuance of petitioner's benefits.{**3 Misc 3d at 581}
Petitioner brings this proceeding pursuant to CPLR article 78 to reverse and annul a decision after a fair hearing of corespondent New York State Office of Temporary and Disability Assistance which affirmed a determination of corespondent New York City Human Resources Administration (the City) discontinuing petitioner's public assistance and food stamp benefits. Petitioner seeks benefits from the City respondent retroactive to the date of termination.[FN*]

Petitioner raises six claims: (1) that the City's determination to discontinue petitioner's benefits was arbitrary and capricious because the City possessed sufficient information about petitioner's daughter to determine that the petitioner and her family had no reportable earned income, (2) that the City failed to accommodate petitioner's mental and physical disability in a manner that was arbitrary and capricious and which was contrary to its obligations under federal and state laws prohibiting discrimination against individuals with disabilities, (3) that the City's use of a mailout income verification questionnaire which failed to ask for any information regarding school attendance with reference [*3]to the earnings of a minor child in a public assistance household was arbitrary and capricious, (4) that the State's failure to require the City to show that it complied with its obligation to examine the case record for information relating to its income verification procedure was arbitrary and capricious, (5) that the ALJ's failure to inquire about the petitioner's depression violated the petitioner's rights under the Americans with Disabilities Act and other statutes, and (6) that the State's determination that petitioner's depression did not constitute "good cause" for petitioner's failure to return the income verification questionnaire was arbitrary and capricious.
The City and State respondents argue that petitioner's benefits were properly terminated based on petitioner's failure to verify her family income, that the petitioner failed to carry the burden of establishing good cause for such failure, and that petitioner's claim raises an issue of whether the administrative determinations are supported by substantial evidence and this proceeding should therefore be transferred to the Appellate Division.{**3 Misc 3d at 582}
As a threshold matter, the court rejects respondents' argument that this proceeding must be transferred to the Appellate Division pursuant to CPLR 7804 (g) because the determination of whether the respondents were correct in determining the petitioner lacked "good cause" raises an issue of substantial evidence. In Matter of Benjamin v McGowan (275 AD2d 290, 291 [2000]) the First Department found that in the context of public assistance benefits an agency's determination of lack of good cause did not raise an issue of substantial evidence. The Court stated "[t]he Administrative Law Judge did not make a finding as to petitioner's credibility; rather she determined that, as a matter of law, documentary evidence is necessary to sustain a claim of good cause. Thus, no question with respect to substantial evidence is presented. The only issue is whether the agency's interpretation and application of the pertinent regulations was arbitrary and capricious." (Id. at 291.) Similarly, the petitioner's argument in this case is not that respondents' determinations were not based on substantial evidence, but rather that the determinations were arbitrary and capricious because respondents did not comply with the relevant statutes and regulations governing the determination and termination of petitioner's benefits. That is, petitioner asserts that the respondents did not consider petitioner's disability and/or failed to comply with their duty to investigate petitioner's circumstances and thereby impermissibly shifted the burden in the fair hearing to petitioner. (See 18 NYCRR 358-5.9 [a].) These are issues of law, not evidence, and therefore transfer pursuant to CPLR 7804 (g) is not warranted.
On the merits of petitioner's claims, this court finds that the respondents' determinations terminating petitioner's benefits were arbitrary and capricious and lack any rational basis based on the governing statutes and administrative regulations.
Recipients of public assistance such as the petitioner in this case are required to provide information sufficient to determine and verify eligibility for such benefits. (See 18 NYCRR 351.5, 351.6.) 18 NYCRR 351.5 (a) provides that "[t]he applicant, recipient, members of his/her household and public records must be relied upon as primary sources of information. Information received from applicants, recipients, and members of the household must be verified. The applicant or recipient is required, wherever possible, to provide such verification by documentation. If the applicant or recipient has previously verified necessary information which is not subject to change and the {**3 Misc 3d at 583}social services district possesses documentation of such verification in its files, the applicant or recipient is not required to resubmit verification of such [*4]information."
A social services agency may use an "eligibility mailout process" in seeking to determine a recipient's eligibility for benefits. (18 NYCRR 351.22.) The rules governing the mailout procedure state:
"(i) If a recipient fails to respond to an eligibility mailout questionnaire within the time period described in the questionnaire, the social services official must send another eligibility mailout questionnaire with a 10-day notice of proposed discontinuance of assistance on the State prescribed form.
"(ii) If the recipient does not respond to the eligibility mailout questionnaire within the 10-day period, the case must be closed at the end of the 10-day period. Any request for assistance made after a case is closed must be considered a new application.
"(iii) If the recipient responds to the eligibility mailout questionnaire during the 10-day notice period, the 10-day notice of proposed discontinuance must be nullified." (18 NYCRR 351.22 [c] [2].)
The regulation further states that "[w]hen a social services district receives indication of ineligibility or of change in degree of need, action shall be taken to review these situations as they occur. An investigation shall be initiated promptly and completed within 30 days." (18 NYCRR 351.22 [e].)
In this case it is undisputed that the petitioner failed to return the December 7, 2001 income verification form to the City respondent in a timely manner. However, what is also undisputed is that the petitioner and her family had no reportable income for purposes of benefit eligibility for the period in question. For purposes of determining petitioner's entitlement to the benefits at issue in this proceeding, the earnings of petitioner's daughter which were reported as a result of the WRS computer match are "disregarded as income or resources in determining the eligibility or degree of need." (18 NYCRR 352.20 [a]; 387.11.) Furthermore, on November 13, 2001, the petitioner attended a face-to-face recertification hearing with the City at which time she provided verification of her income and household composition. A review of the documents in the petitioner's file maintained by the City indicates that in addition to the information provided by the petitioner at this recertification {**3 Misc 3d at 584}hearing, the City was aware of the age of the petitioner's daughter and that she was a student in school. Thus under 18 NYCRR 351.5 petitioner was not required to provide further, redundant verification of this information less than a month after appearing at a face-to-face meeting with the City.
The ALJ's determination is arbitrary and capricious because the City failed to establish in the first instance that in fact it did not possess the information necessary to verify petitioner's income before utilizing the mailout procedure. In this case, "[r]espondent agency made no effort to ascertain the facts of this matter . . . The administrative appeal process is not a substitute for proper procedures at the agency level." (Matter of Benjamin v McGowan, 275 AD2d 290, 292 [1st Dept 2000] [internal quotation marks omitted].) At no point has the City claimed that the petitioner and her family are in fact ineligible for benefits. In fact, petitioner's benefits were subsequently restored in full after further tortuous administrative and legal proceedings. Had the City originally utilized the income and verification information already in its files, these subsequent proceedings and litigation might have been avoided. This is not a case in which the petitioner willfully or consistently refused to comply with agency information requests (see Matter of Jones v New York City Dept. of Social Servs., 269 [*5]AD2d 397 [2000]). The respondents do not assert that the petitioner failed to comply with their requests for information and verification except for the one isolated incident that is the subject of this proceeding.
The income verification form received by the petitioner was defective in that it provided no opportunity for petitioner to report the exempted income of her daughter. The form fails to ask whether any income that may be reported was earned by a dependent full-time secondary school student. Thus even if the petitioner had returned the form, the petitioner properly would have reported that there was no household income since any income earned by the petitioner's daughter was not reportable. In any case, by the time of the fair hearing and based on the testimony adduced there, the City had sufficient information to verify that the petitioner had no reportable income for benefit purposes. (See Matter of Care v Wing, 297 AD2d 809, 811-812 [2d Dept 2002].)
The fair hearing conducted by the State respondent was also flawed and impermissibly shifted the burden to the petitioner. 18 NYCRR 358-5.9 (a) provides that "[e]xcept, where otherwise established {**3 Misc 3d at 585}by law or regulation, in fair hearings concerning the discontinuance, reduction or suspension of public assistance, medical assistance, food stamp benefits or services, the social services agency must establish that its actions were correct."
At the fair hearing, the City introduced exhibits including the income verification questionnaire sent to the petitioner, the WRS report for the petitioner's daughter, and a report of the composition of the petitioner's family. After these exhibits were introduced, the ALJ inquired into the identity and age of the petitioner's daughter. The petitioner replied that her daughter was 16 years old and had been working. After the petitioner acknowledged receiving the income verification questionnaire, the ALJ asked whether the petitioner returned the questionnaire and the petitioner replied "No, I didn't send it back because I'm depressed."
In denying the petitioner's request to reinstate benefits, the ALJ stated that "[a]lthough the Appellant contended that she did not return the questionnaire because she is depressed and forgot all about it, the Appellant's contention does not constitute good cause. Therefore the Appellant did not establish good cause for the failure to return the completed questionnaire to the Agency."
The ALJ's finding that petitioner's depression could not constitute good cause is in direct contravention of 18 NYCRR 351.26 (a) (1) which expressly provides that "good cause for failure to comply with an eligibility requirement exists when: . . . the applicant or recipient has a physical or mental condition which prevents compliance." The ALJ therefore committed an error of law in determining that petitioner's depression could not constitute good cause and made no factual finding on that issue. The ALJ's determination is therefore contrary to law and lacks a rational basis.
This court having found that the respondents' determination was arbitrary and capricious based on the failure to follow and apply the regulations governing public benefit determination as described above expressly does not reach petitioner's claims under federal and state disability statutes. The court further exercises its discretion in declining petitioner's application for attorney's fees under CPLR 8601 as the respondents' position was substantially justified. (See Matter of McCrimmon v Dowling, 247 AD2d 620, 621 [2d Dept 1998].){**3 Misc 3d at 586}
Therefore, it is ordered that the petition is granted and respondents' determinations are annulled [*6]and respondents directed to restore to petitioner her public assistance and food stamp benefits from March 27, 2002 through April 17, 2002.

Footnotes

Footnote *: Petitioner subsequently reapplied for benefits. After other unrelated proceedings the City respondent accepted petitioner's application for benefits retroactive to April 17, 2002. Petitioner in this proceeding is seeking benefits only for the remaining period that her family was without benefits because of respondents' determinations from March 27, 2002 to April 17, 2002.